## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

Serveco North America, LLC,

                Plaintiff,

                        Case No. 4:22-cv-140-MLB

v.

Denis Bramwell,

                Defendant.

_____/

## OPINION & ORDER

Defendant Denis Bramwell moves to dismiss the complaint Plaintiff filed against him for lack of personal jurisdiction or, in the alternative, for failure to state a claim. (Dkt. 11.) The Court **GRANTS** that motion.

## I.   Background

Apex Health Manufacturing, Inc. (a Taiwanese corporation that is not a party to this lawsuit) manufactures bedframes. (Dkts. 1 ¶¶ 8, 9; 16 at 1; 16-1 ¶ 2.) Plaintiff, a Georgia corporation, had a contract with Apex to provided warranty services for those bedframes. (Dkt. 1 ¶ 9.) Under the contract, Apex affixed warranty information to its bedframes,

provided Plaintiff's contact information, and directed consumers to contact Plaintiff for warranty claims. (Dkt. 1 ¶¶ 11-12.) Defendant Denis Bramwell is an independent contractor for Apex (although the parties do not explain exactly what Defendant does for Apex). (Dkts. 1 ¶8 ; 16 at 1; 16-1 ¶ 2.) Defendant lives in San Clemente, California. (Dkt. 1 ¶ 2.) On July 29, 2020, Defendant "informed" Plaintiff that Apex had terminated its contract with Plaintiff. (Dkt. 1 ¶ 15.)

In response, Plaintiff sent Apex and Defendant a cease-and-desist letter, instructing them to remove Plaintiff's name from Apex bed frames. (Dkt. 1 ¶ 17.) Plaintiff claims Apex did not do that. (Dkt. 1 ¶ 18.) Plaintiff also discovered Apex owed it money. (Dkt. 1 ¶¶ 16, 19-20.) When Plaintiff confronted Defendant with its concerns about Apex's termination of the contract, Defendant said he would "influence retailers and consumers" not to do business with Plaintiff. (Dkt. 1 ¶ 23.) As part of this, Defendant allegedly said it would "bury" Plaintiff with Denver Mattress, a large mattress retailer that was doing business with Plaintiff. (Dkt. 1 ¶ 24.) Defendant then allegedly caused Denver Mattress to end its contract with Plaintiff. (Dkt. 1 ¶¶ 25-26.)

2

Plaintiff sued Defendant for trademark infringement under the Lanham Act. It also asserts claims under Georgia law for deceptive trade practices, tortious interference with contract, slander, and punitive damages. (Dkt. 1.) Defendant moves to dismiss under Federal Rules of Civil Procedures 12(b)(2) and 12(b)(6). (Dkt. 11.)

## II. Standard of Review

### A. Motion to Dismiss Pursuant to 12(b)(2)

Where "a defendant moves to dismiss a complaint for lack of personal jurisdiction, the court analyzes the claim under a three-step burden-shifting process." *Diulus v. Am. Express Travel Related Servs. Co., Inc.*, 823 F. App'x 843, 848 (11th Cir. 2020). "First, the plaintiff bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Id.* (citing *United Technologies Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). "Second, if the complaint alleged sufficient facts, and the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* "Third, [w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe

all reasonable inferences in favor of the plaintiff." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).

## B.   Motion to Dismiss Pursuant to 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled allegations must "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.  Discussion

### A.   Personal Jurisdiction

Before a federal court can exercise personal jurisdiction over a non-resident defendant, the Court must determine it has jurisdiction under (1) the long-arm statute of the state in which it sits, and (2) the Due

Process Clause of the United states Constitution. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000).

### 1. Prima Facie Case

Since Plaintiff's complaint must establish a prima facie case of personal jurisdiction, the Court limits its initial analysis to the allegations in the complaint. Only if the Court finds a prima facie case will it consider the parties' affidavits. *See Diulus*, 823 F. App'x at 849 ("Once the defendant files a motion to dismiss, the plaintiff bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction. If the plaintiff doesn't meet his burden, the district court doesn't go to the second and third steps of the burden-shifting process, and the motion should be granted.")

### a)    Georgia Long-Arm Statute

Jurisdiction under the Georgia long-arm statute is not "coextensive with procedural due process." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d at 1258. Instead, the state statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of due process." *Id.* at 1259. Georgia's long-arm statute provides, in relevant part:

A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

(1) transacts any business within this state;

(2) commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) commits an injury in this state caused by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered within this state ...

O.C.G.A. § 9–10–91.

Plaintiff argues Defendant has transacted business in Georgia and the Court has personal jurisdiction over Defendant pursuant to subsection one of the long-arm statute.  Jurisdiction exists under that provision if (1) the nonresident has purposefully done some act or consummated some transaction in this state, (2) the cause of action arises from or is connected with that act or transaction, and (3) a Georgia court's exercise of jurisdiction would not offend traditional fairness and substantial justice.  *Horizon Air Charter, LLC v. ACM Havayollari Sanayi,* 2022 WL 16702798, at *3 (S.D. Ga. Nov. 3, 2022) (citing *Aero Toy*

*Store v. Grieves*, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006)).  The first two factors determine whether "a defendant has established the minimum contacts with the forum state necessary for the exercise of jurisdiction" while the third element protects against jurisdiction arising "solely from random, fortuitous, or attenuated contacts." *Id.* (citing *Paxton v. Citizens Bank & Trust of W. Ga.*, 704 S.E.2d 215, 219 (Ga. Ct. App. 2010)).  "Of course, Georgia's long-arm statute cannot expand personal jurisdiction beyond constitutional limits and thus the statute provides jurisdiction only to the "maximum extent permitted by procedural due process." *Delta Air Lines, Inc. v. Wunder*, 2014 WL 12115908, at *2 (N.D. Ga. Mar. 7, 2014).

Many of Plaintiff's allegations concern the acts of Apex, not Defendant.  Plaintiff alleges, for example, that it had a contract with Apex, that Apex paid Plaintiff for its services, and that Apex continued to print Plaintiff's warranty information after the contract ended.  (Dkt. 1 ¶¶ 9, 13, 18.)  None of these allegations involve Defendant, so the Court does not consider them in assessing personal jurisdiction.  Plaintiff's allegation that Defendant is an "agent" of Apex does not change this determination.  A court may not exercise jurisdiction over an individual

based on a company's contacts with the state unless the individual was a "primary participant" in the actions directed at Georgia. *See Meyn Am., LLC v. Tarheel Distributors, Inc.*, 36 F. Supp. 3d 1395, 1403–04 (M.D. Ga. 2014) (citing *Amerireach.com, LLC v.* Walker, 719 S.E.2d 489, 493-96 (Ga, 2011)). That is because a court must individually assess personal jurisdiction over an individual. *Id.* The same rule must apply to an agent. Plaintiff does not allege Defendant was involved in Apex's formation of a contract with Plaintiff or otherwise acted as a "primary participant" in Apex's interactions with him. So, Apex's alleged actions directed towards Georgia do not establish jurisdiction over Defendant.

As for Defendant, Plaintiff relies upon two events: first, Defendant told Plaintiff that Apex had ended its agreement with Plaintiff, (Dkt. 1 ¶ 15), and; second, that (when Plaintiff complained and sent the cease-and-desist letter) Defendant threatened to interfere with Plaintiff's relationships with other customers and then caused Denver Mattress to terminate its relationship with Plaintiff (Dkt. 1 ¶¶ 23-26). Plaintiff does not allege any of its clients, including Denver Mattress, were in Georgia.[1]

---

[1] Though the Court is restricted to the complaint when assessing a prima facie case for personal jurisdiction, the Court notes that Defendant's affidavit presents, and Plaintiff does not refute, that all interactions

So, Plaintiff's efforts (perhaps while in California) to call or contact a mattress company (perhaps in Colorado) does not constitute transacting business in Georgia. That Plaintiff sent Defendant the cease and desist letter from Georgia also is not enough to establish jurisdiction. A plaintiff's efforts to initiate contact with an out-of-state defendant does not, by itself, create jurisdiction over that defendant. *Id.* (citing *Stuart v. Peykan, Inc.,* 261 Ga. App. 46, 48-49 (2003) (noting that "[m]ere telephone ... contact with an out-of-state defendant is insufficient to establish the purposeful activity with Georgia required by the long-arm statute")). What matters is whether the Plaintiff "purposefully avails [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* Receiving a letter is not enough.

Defendant's contacts to Georgia thus appear limited to communicating (perhaps by phone or on the Internet) with Plaintiff on behalf of Apex to terminate the contract and to convey a threat to interfere with Plaintiff's business relationships. (Dkt. 1 ¶¶ 15, 23-24.)

---

between Defendant and Plaintiff's clients (including Denver Mattress) were directed to individuals outside of Georgia. (Dkt. 11-1 ¶ 13.)

Defendant argues none of these interactions occurred in Georgia because Defendant has not been to Georgia, either personally or professionally, in more than ten years.  (Dkt. 11 at 6.)  Physical presence in the state, however, is not a requisite for jurisdiction under subsection (1) of Georgia's long-arm statute, and "Georgia allows the assertion of long-arm jurisdiction over nonresidents based on business conducted through . . . Internet contacts."  *ATCO Sign & Lighting Co. v. Stamm Mfg.*, 680 S.E.2d 571, 576 (Ga. Ct. App. 2009).  The ultimate question is whether the defendant engaged in conduct directed at Georgia so that is could "fairly be said" that Defendant "transacted" business in Georgia. *Diamond Crystal Brands, Inc.*, 593 F.3d at 1264; *see also id.* at 1264 n.18 ("Transact means to prosecute negotiations, to carry on business, to carry out, or to carry on.").  That Plaintiff does not allege Defendant did anything while physically in Georgia is relevant but does not preclude jurisdiction.

Plaintiff only says Defendant "informed" it of Apex's decision to terminate the contract without alleging Defendant initiated that call. Likewise, Plaintiff does not allege Defendant placed the threatening call (rather than having made the threat after Plaintiff called Defendant).

10

While the Court must draw all reasonable inferences in favor of Plaintiff, the Court cannot resort to speculation. *Twombly*, 550 U.S. at 555 (a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level.") So it appears Plaintiff has not alleged Defendant did anything in Georgia. But even if Defendant initiated these calls into Georgia, that would not be enough. Defendant was not a party to that contract and did not terminate the contract. He merely conveyed another company's decision. His call to tell Plaintiff what Apex did does not constitute transacting business in Georgia. And the threat to interfere with business does not constitute transacting business.

Plaintiff has not established jurisdiction under Georgia's long-arm statute. Even assuming it had, Plaintiff's contacts with Georgia would not be enough to pass constitutional muster for the reasons stated below.

### b)    Constitutional Requirements

"The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267. "The heart of this protection is fair warning—the Due Process Clause requires that the

11

defendant's conduct and connection with the forum state [be] such that he should reasonably anticipate being haled into court there." *Id.* Courts have recognized two types of jurisdiction under the Due Process Clause: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).[2]   "Specific jurisdiction, [as relevant here,] depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation." *Id.*

To have specific jurisdiction over a defendant, the Court must find (1) sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment and that (2) maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1292 (S.D. Fla. 2009)(citing *International Shoe Co. v. Washington*, 326 U.S.

---

[2] General jurisdiction typically arises from contacts with the forum states that are unrelated to the litigation.  To satisfy due process, such contacts must be "so continuous and systematic as to render [the defendant] essentially at home in the forum state."   *Goodyear Dunlop Tires Operations*, 564 U.S. at 919.  Plaintiff's allegations do not come anywhere close to establishing general jurisdiction over Defendant.  So, Plaintiff must establish specific jurisdiction to remain in this Court.

310, 316 (1945)).  Only if both prongs of the Due Process analysis are satisfied may this Court exercise personal jurisdiction over a nonresident defendant.  *Id.* (citing *Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir.1996)).  Minimum contacts in the context of specific jurisdiction involve three criteria.  First, the contacts must be related to the plaintiff's cause of action or have given rise to it.  Second, the contacts must involve some purposeful availment to the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws.  Finally, the defendant's contacts within the forum state must be such that it should reasonably anticipate being haled into court there. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir.1996).  Defendant's conduct does not satisfy the second or third criteria.

Defendant, an independent contractor, "informed" Plaintiff that Apex was terminating its contract with Plaintiff.[3]  (Dkt. 1 ¶ 15.)  By

---

[3] Like under the Georgia long-arm statute, this Court has found that contacts initiated by an in-state plaintiff toward an out-of-state defendant do not support personal jurisdiction under the constitution. *Allegiant Physicians Servs., Inc. v. Sturdy Mem'l Hosp.*, 926 F. Supp. 1106, 1115 (N.D. Ga. 1996).  For this reason, the Court focuses on the only contact Defendant initiated.

giving Plaintiff bad news on behalf of Apex, Defendant did not purposeful avail the privilege of conducting activities in Georgia on himself or, in any way, invoked the benefits or protections of Georgia law.  This is especially true since this singular interaction did not lead to any long-term relationship between Plaintiff and Defendant but rather ended the relationship between Plaintiff and Apex. *See Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 582 (M.D. Fla. 1991) (a single contact can establish specific jurisdiction when it "creates a substantial connection to the forum."); *Risper v. Mountain Run Sols., LLC*, 2021 WL 7708393, at *8 (N.D. Ga. Nov. 24, 2021) ("[Plaintiff's] assertion of personal jurisdiction based on a single phone call similarly fails under a traditional purposeful availment/direction analysis, as purposeful direction requires that the telephone communications be substantial, and not a single telephone call."); *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (finding no personal jurisdiction based on one telephone call and no visits to the forum state); *Aviles v. Kunkle*, 978 F.2d 201, 205 (5th Cir. 1992) (finding one telephone call and one letter into the forum state insufficient to justify exercising personal jurisdiction over the defendant.)

Plaintiff does not plead a prima facie case of personal jurisdiction under Georgia's long-arm statute or the Constitution.

## 2. Affidavit Evidence

Even if Plaintiff's complaint stated a prima facie case of personal jurisdiction, the Court finds the parties' affidavit evidence affirms the Court's conclusion that it lacks personal jurisdiction over Defendant.

Defendant submits two detailed affidavits stating he does not live, work, or own property in Georgia. (Dkt. 11-1 ¶¶ 3-5.) He has not executed any documents in Georgia, nor has he executed any documents with parties in Georgia. (Dkt. 11-1 ¶ 6.) He has not executed or performed contracts in Georgia. (Dkt. 11-1 ¶ 7.) He has not traveled to Georgia in connection with his business relationship with Plaintiff. (Dkt. 11-1 ¶ 10.) He has only ever met with Plaintiff outside of Georgia. (Dkt. 11-1 ¶ 11.) And all phone and emails he exchanged with Plaintiff's other clients, including Denver mattress, were directed at individuals outside of Georgia. (Dkt. 11-1 ¶ 13.) As for his relationship with Plaintiff, he never negotiated or entered a contract with Plaintiff. (Dkt. 16-1 ¶ 4.) He never paid or was paid by Plaintiff. (Dkt. 16-1 ¶¶ 5-6.) He never provided goods or services to Plaintiff or accepted them from Plaintiff. (Dkt. 16-1

¶¶ 7-8.)   Based on these affidavits, the Court does not have personal jurisdiction over Defendant.  *See Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034 (11th Cir. 1991) ("[Defendant] entered into no contract or other continuing relationship or obligation with [Plaintiff] that would have made it reasonable for him to foresee being haled into court in [Georgia].  [Defendant] did not seek out [Plaintiff's] business, and his contacts with [Plaintiff] were likewise not a result of any other activities he initiated within the forum.").

At this point, the burden would shift back to Plaintiff to produce evidence supporting jurisdiction.  *Diulus*, 823 F. App'x at 848.   But Plaintiff's affidavits do nothing to help its argument.  Plaintiff submits two identical affidavits, one from its CEO and one from its president. They are ambiguous and vague, perhaps to shield the fact that Defendant lacks any connections with Georgia.  The affidavits, for example, say that "many of [Plaintiff's] business interactions with [Defendant] included meeting [Defendant] at sales locations and conducting business, both in and outside of Georgia, [with Defendant]." (Dkt. 15-1 ¶ 5.) Plaintiff's use of the conjunction "and" prevents the Court from reading this as an assertion that Plaintiff met with Defendant in Georgia, perhaps

Defendant asserts it met with Plaintiff only outside of Georgia but "conduct[ed] business" in Georgia.  And the conclusory allegation that Plaintiff "conduct[ed] business" in Georgia neither rebuts Plaintiff's unambiguous assertions about his lack of contacts with Georgia nor provides any facts from which the Court can assess Defendant's minimum contacts.

The declarants' other assertions also do not help.  The affiants assert that "[Plaintiff] made [Defendant] aware that [Plaintiff] is a Georgia-based corporation" (Dkt. 15-1 ¶ 7); "[Defendant] and [Plaintiff] communicated and conducted business within the State of [Georgia]" (Dkt. 15-1 ¶ 8); "[Plaintiff] has conducted business with [Defendant] in Georgia well over one hundred (100) times" (Dkt. 15-1 ¶ 8); and [Defendant] "conducted business" in Georgia by "contracting [Plaintiff's] services that were established in Georgia" (Dkt. 15-1 ¶ 9).  Nothing there says that Defendant ever directed business at Georgia.  At most, the affidavits say that Plaintiff and Defendant—allegedly over 100 times— engaged in some sort of business with one another (whatever that business may be), that one of the parties (likely Plaintiff) was in Georgia, and that Defendant knowingly did business with a Georgia-based

company. But Plaintiff provides no examples of its numerous business transactions with Defendant, who contacted who, or how those contacts occurred. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) ("[C]onclusory assertions of ultimate fact are insufficient to shift . . . the burden of producing evidence supporting jurisdiction."). In fact, the only example Plaintiff provides is that Defendant conducted business in Georgia by contracting Plaintiff for its services. That is insufficient, particularly in the light of the fact that Plaintiff admits its contract was with Apex, not Defendant. *See Elec. Transaction Network v. Katz*, 734 F. Supp. 492, 499 (N.D. Ga. 1989) ("[A]n individual's contract with an out-of-state party alone cannot automatically establish sufficient minimum contacts with the forum."). Even considering the affidavits, the Court concludes it does not have personal jurisdiction over Defendant.

**B.  Failure to state a Claim**

**1. Lanham Act**

Defendant argues Plaintiff's Lanham Act claim ought to be dismissed because it is improper against him individually, Defendant's use of Plaintiff's information constitutes fair use, and Plaintiff has not properly pleaded confusion. (Dkt. 11 at 12-18.) As a threshold matter,

Plaintiff does not specify which type of Lanham Act claim it purports to bring.  This alone might doom Plaintiff's attempt to plead Lanham Act claims.  *See Black Diamond Land Mgmt. LLC v. Twin Pines Coal Inc.*, 707 F. App'x 576, 579 (11th Cir. 2017).  As Plaintiff labels Count I "trademark infringement," the Court assumes Plaintiff is raising a false association claim pursuant to 15 U.S.C. § 1225(a)(1)(A).

To bring a false association claim, a plaintiff must assert (1) proof of a valid trademark, and (2) likelihood of confusion.  *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).  Defendant argues, among other things, that Plaintiff has failed to allege facts demonstrating the trademarks that Defendant allegedly infringed.  (Dkt. 11 at 17.)  While Defendant frames this as a likelihood of confusion issue, it shows a more fundamental problem with Plaintiff's Lanham Act claim—Plaintiff has not alleged the existence of a valid trademark.  So, Plaintiff has failed to state a claim under the Lanham Act, and the Court need not address Defendant's arguments on individual liability and fair use.[4]

---

[4] The Court also agrees with Defendant that "Plaintiff's infringement claim consists only of conclusory allegations unsupported by factual allegations and are nothing more than a restatement of the legal standard." (Dkt. 11 at 18.)  So, it does not plausibly allege a violation of the statute.

## 2. Deceptive Trade Practices

Defendant argues Plaintiff's Uniform Deceptive Trade Practices Act ("UDTPA") claim under Georgia law should be dismissed because it fails to allege future harm.  (Dkt. 11 at 18-20.)   The Court agrees. "[I]njunctive relief is the only remedy permitted by the UDTPA." *Catrett v. Landmark Dodge, Inc.*, 253 Ga. App. 639, 644 (2002).  "By definition, an injunction provides relief from future wrongful conduct: [t]he remedy by injunction is to prevent, prohibit or protect from future wrongs and does not afford a remedy for what is past." *Id*.  "Thus, to state a claim and to establish standing under the UDTPA, the plaintiffs must allege that they are likely to be damaged in the future by an unfair trade practice." *Collins v. Athens Orthopedic Clinic*, 356 Ga. App. 776, 779 (2020).  Here, Plaintiff's complaint does not allege that Defendant's alleged deceptive trade practices are ongoing, or that Plaintiff will suffer future harm absent an injunction.  In fact, all of Plaintiff's allegations are written in the past tense.  (Dkt. 1 ¶¶ 33-37.)  Notably, Plaintiff does not allege that Apex is still manufacturing beds with its name and contact information.

Plaintiff argues "by the very nature of the products being sold by Apex, [Defendant's] representations to consumers that [Plaintiff] would provide warranty services for bed frames manufactured by Apex, and the fact that [Plaintiff's] tradename is still affixed to a large number of Apex's bed frames, [Plaintiff] will continue to suffer economic and reputational damages (i.e., future harm) directly stemming from [Defendant's] deceptive trade practices." (Dkt. 15 at 19.)  This argument misses the mark.  The key inquiry is not whether some past conduct will cause future harm.  Rather, the question is whether there will be future *wrong* and harm *that can be remedied by an injunction*.  *Catrett*, 253 Ga. App.at 644.

*Collins* demonstrates this point.  In that case, a hacker stole personally identifiable information from  thousands of clinic patients and sold it on the dark web.  *Collins*, 356 Ga. App. at 777.  In respect to the UDPA claim brought by the patients, the Court of Appeals held  "an injunction would serve no purpose at this point because, as alleged, [the plaintiffs'] personal information was already sold and available on the dark web.  As such, the plaintiffs have failed to allege a future harm caused by the unfair practice, as required by the UDTPA, and the trial

court properly dismissed this claim." *Id.* at 780.  The plaintiffs in *Collins* would likely suffer future harm from the past data breach.  But the information was already on the dark web, and no injunction could change that fact.  *Id.*  The same is true here: Plaintiff may suffer future harm from the beds that Apex sold after its contract with Plaintiff ended.  But those beds have been sold, and no injunction will change that or prevent those purchasers from contacting Plaintiff for warranty services.  So, absent allegations that Defendant *is still causing* Apex to sell beds with Plaintiff's information, an injunction would serve no purpose.[5]  *See also Catrett*, 253 Ga. App. at 644 ("Damage allegedly caused by the 1999 misrepresentation cannot be remedied through an injunction."); *Willingham v. Glob. Payments, Inc.*, 2013 WL 440702, at *17 (N.D. Ga. Feb. 5, 2013) ("[A]n injunction against [Defendant] would do nothing to change the data theft by hackers in the past and would not prevent the

---

[5] Defendant argues Plaintiff's allegations preclude any possibility of Defendant continuing to advertise Plaintiff as providing warranty services because the contract was terminated.  (Dkt. 11 at 19-20.)  This argument misses the mark entirely—Defendant's use of Plaintiff's information only could become deceptive after the contract ended.  And that is precisely what Plaintiff claims here.  Nevertheless, Plaintiff does not allege in the complaint that this is still occurring today.

thieves from misusing any stolen information in the future.")  Plaintiff's UDTPA claim cannot survive a motion to dismiss.

### 3. Tortious Interference with Contract

Defendant argues Plaintiff's tortious interference with contractual relations claim fails because Defendant was not a stranger to the business relationship between Plaintiff and Denver Mattress.  "In order for a defendant to be a liable for tortious interference with contractual relations, one must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract." *Tolson Firm, LLC v. Sistrunk*, 338 Ga. App. 25, 32, 789 S.E.2d 265, 271 (2016).

Where "a defendant had a legitimate interest in either the contract or a party to the contract," he is not a stranger to the contract itself or to the business relationship giving rise thereto and underpinning the contract. *Cox v. City of Atlanta*, 266 Ga. App. 329, 332 (2004).  Defendant argues "Plaintiff's allegations admit that [Defendant] acted on behalf of Apex in connection with Apex's relationship with Denver Mattress." (Dkt. 11 at 22.)  "Therefore, Plaintiff's allegations admit that [Defendant] had a legitimate economic interest in both Apex and Denver Mattress

and therefore [Defendant] was not a stranger to the contract and act[ed] with privilege." (Dkt. 11 at 22.)

The Court is puzzled by Defendant's argument, and even more so by Plaintiff's response thereto. Plaintiff argues it might introduce evidence that Defendant was not acting as an agent of Apex. This contradicts its own pleading. (Dkt. 1 ¶ 23.) It's also irrelevant. The relevant inquiry is whether Defendant had any interest in the relationship *between Plaintiff and Denver Mattress*, not in the relationship between Plaintiff and Apex. *Mabra v. SF, Inc.*, 316 Ga. App. 62, 64 (2012) ("To establish under the first element that the defendant acted without privilege, the plaintiff must show that the defendant *was a stranger to the contract or business relation at issue*.") And Plaintiff's complaint shows only that Defendant was not a stranger to Apex. It does not follow, and the complaint does not otherwise indicate, that Defendant was in any way related to the business relationship between Plaintiff and Denver Mattress. Based on Plaintiff's response, there might be evidence that Apex (and through it Defendant) was somehow intertwined in that relationship. But the complaint does not say so, and the Court is bound

by the pleading. The Court only dismisses Plaintiff's tortious interference claim on jurisdictional grounds.[6]

### 4. Slander

Defendant argues Plaintiff's slander claim is barred by the statute of limitations. (Dkt. 11 at 23.) Defendant also argues "Plaintiff fails to identify or articulate any statement made by [Defendant] to Denver Mattress whatsoever." (Dkt. 11 at 24.) The Court agrees.

### a)    Statute of Limitations

Georgia has a one-year statute of limitations for slander. *Allen v. W. Union Fin. Servs., Inc.*, 2015 WL 1931390, at *2 (S.D. Ga. Apr. 28, 2015) (citing O.C.G.A. § 9–3–33). Plaintiff filed its complaint on June 24, 2022. The statute of limitations thus bars liability for any defamatory statement made before June 24, 2021. Plaintiff does not specify the date on which Defendant allegedly defamed it, but the complaint alleges Defendant vowed to "bury" Plaintiff with Denver Mattress "shortly" after Defendant terminated the contract on July 29, 2020 and that Denver Mattress "abruptly" terminated its contract with Plaintiff. (Dkt. 1 ¶¶ 15,

---

[6] Plaintiff's tortious interference claim contains almost exclusively vague and conclusory allegations. But Defendant does not raise that argument, so the Court does not dismiss the claim on that ground.

24.)  Any statement made after June 2021 could not be considered "shortly" after July 2020.  This is sufficient to conclude Plaintiff's claim is barred by the statute of limitations.  *See, e.g., Washington v. Skechers USA, Inc.*, 2019 WL 3334765 (N.D. Ga. July 24, 2019) (finding defamation claim was barred when the complaint did not specify a date of the alleged defamatory statement, but stated it was made "a few days" after a date outside the statute of limitations.), *Keh v. Americus-Sumter Cnty. Hosp. Auth.*, No. 2006 WL 871109, at *6 (M.D. Ga. Mar. 31, 2006*), aff'd sub nom. Keh v. Americus & Sumter Cnty. Hosp.*, 377 F. App'x 861 (11th Cir. 2010) ("Neither Plaintiff's Complaint nor her Amended Complaint allege any statement or action of any Defendant subsequent to [one year before the filing of the complaint].")

Plaintiff argues the complaint does not limit [Defendant's] remarks to a timeframe between July and August of 2020, and "the Court can reasonably infer from [the] Complaint that [Defendant] continued making defamatory statements at least until June 24, 2021."  But there is no allegation in the complaint that allows for such an inference.  While the Court construes the allegations in the complaint in the light most favorable to Plaintiff, the Court cannot deny a motion to dismiss based

on speculation or facts that have not been alleged. *See Twombly*, 550

U.S. at 555. ("Factual allegations must be enough to raise a right to relief

above the speculative level.").[7]  Plaintiff's claim would fail even if it were

not barred by the statute of limitations.

### b)   Elements of Slander

There are four elements in a cause of action for defamation: (1) a

false and defamatory statement concerning the plaintiff; (2) an

unprivileged communication to a third party; (3) fault by the defendant

amounting at least to negligence; and (4) special harm or the

"actionability of the statement irrespective of special harm." *Mathis v.

Cannon*, 276 Ga. 16, 20–21 (2002).  As Defendant points out, Plaintiff

does not identify the false or defamatory statement allegedly made.  It

only alleges "[u]pon information and belief, Defendant made false

statements and disparaging remarks to third parties regarding Plaintiff's

trade or profession," and "Defendant made false statements and

disparaging remarks regarding Plaintiff to Denver mattress."  (Dkt. 1

---

[7] Admittedly, Plaintiff alleges that Defendant made a false statement regarding Plaintiff "on at least one occasion" without providing any timeframe.  (Dkt. 1 ¶ 27.)  This conclusory allegation is insufficient to state a claim for slander.

¶¶ 43, 45.)  In fact, Plaintiff does not properly plead any elements of defamation.  Instead, Plaintiff's slander claim contains only conclusory allegations and the mere "recital of elements" that cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  So, Plaintiff has failed to state a slander claim.[8]

## IV.  Conclusion

The Court **GRANTS** Defendant's Motion to Dismiss (Dkt. 11).  The Court **DIRECTS** the Clerk to close this case.

**SO ORDERED** this 20th day of March, 2023.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[8] Because the Court dismisses all of Plaintiff's substantive claims, Plaintiff's claim for punitive damages cannot survive.  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1304–05 (11th Cir. 2009).